**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

JUAN F. MORALES,

*Defendant.*

Case No. 15-10009-EFM-1

**MEMORANDUM AND ORDER**

This matter comes before the Court on Juan Morales' Motion to Suppress (Doc. 34). Morales contends that evidence of methamphetamine and cocaine obtained during a traffic stop should be suppressed because the stop was not justified at its inception and his consent to search was invalid because of an unreasonable detention. Specifically, Morales argues that the stop was not justified because the highway patrolman misinterpreted Kansas traffic law about whether a turn signal is required when two lanes become one. But under recent U.S. Supreme Court precedent, the Court finds that the stop was valid even if the trooper made a reasonable mistake of law. And the Court finds that the resulting detention was not unreasonable in duration or scope and that Morales' consent was valid. In the alternative, the Court finds that there was reasonable suspicion for the stop based on other information obtained through surveillance during an ongoing drug investigation. As a result, the Court denies Morales' motion to suppress.

## I. Factual and Procedural Background

In December 2014, a task force of the Drug Enforcement Administration was intercepting calls under a state-issued wiretap of the phone of Codefendant Filiberto Escobedo-Colon as part of a drug-related investigation in Garden City, Kansas. The task force had intercepted four calls between Escobedo-Colon and Codefendant Victor Linares, who lived in Lamar, Colorado. Undercover DEA agents had made two controlled buys of cocaine from Linares in the summer of 2014 at his ranch east of Lamar. One of the intercepted calls indicated that a payment had been made to Escobedo-Colon for drugs to be obtained from Linares in Colorado. On December 19, 2014, Escobedo-Colon called Linares and handed the phone to a person later determined to be Defendant Juan Morales, who talked about coming to meet Linares at his ranch the next day.

Members of the task force, which included Finney County sheriff's deputy Michael Tabor, set up surveillance the next day near Linares' ranch outside of Lamar. Based on intercepted calls, the task force believed that Morales was on his way to pick up drugs from Linares. That afternoon, a maroon 2001 Ford Windstar minivan arrived at the ranch, stayed about 15 minutes, and left driving east on U.S. Highway 50. Members of the task force followed the minivan into Kansas. Tabor contacted Kansas Highway Patrol Trooper Brody Gosch and asked him to stop a vehicle coming back from Colorado with narcotics. Tabor told Trooper Gosch that the subject of the investigation was driving a maroon 2001 Ford Windstar minivan and provided the license tag number.

A few hours later, Trooper Gosch stopped Morales driving the maroon 2001 Ford Windstar minivan on U.S. Highway 50 west of Lakin, Kansas. Trooper Gosch observed Morales driving in the right lane on a "super two" highway, which features two eastbound lanes for a short distance, the extra lane being provided as a passing lane. When the two lanes narrowed to

become one lane, Trooper Gosch stopped Morales for failing to use a turn signal. The officer asked Morales where he had been, and Morales said he had visited family in Syracuse earlier that day. About 10 minutes after the stop began, the officer returned Morales' license and documentation, issued a warning citation, and said "you take care, sir." The officer took two steps away from the passenger window, returned, asked Morales if he could ask him a few more questions, and Morales agreed. Trooper Gosch asked Morales more questions about his travel that day, the family he said he visited, and whether he had any drugs in the vehicle. After about three minutes, Trooper Gosch asked Morales, "Is it OK if I search your vehicle?" Morales nodded his head affirmatively and after the Trooper, who wanted a verbal response, repeated the request once or twice Morales made a verbal response of "OK." Trooper Gosch searched the vehicle and found a white plastic bag that another officer had observed Morales place between the driver and passenger seats. Inside the bag were two balls that contained a substance that later tested positive for cocaine and two balls that contained a substance that later tested positive for methamphetamine.

In February 2015, a federal grand jury returned an indictment charging Morales with: 1) a drug conspiracy with Linares and Escobedo-Colon, 2) two counts of using a communication facility to facilitate a drug trafficking crime, 3) possession with the intent to distribute methamphetamine, 4) possession with the intent to distribute cocaine, and 5) traveling in interstate commerce to aid drug trafficking. In May 2015, Morales filed a motion to suppress the evidence seized from the traffic stop. The Court held a hearing on the motion in June 2015.

**II. Analysis**

Morales challenges the traffic stop as unjustified because he argues that he did not commit a traffic violation and that the officer's flawed understanding of state law rendered the

stop invalid. In addition, Morales argues that the resulting stop was unreasonable in duration and scope so that the resulting search should be invalid. Morales does not otherwise contest that he gave consent to the search. The government contends that Morales committed a traffic violation justifying the stop, that the detention was reasonable, and that Morales voluntarily consented to having his vehicle searched.

An investigative detention, or *Terry* stop, must be supported by reasonable suspicion of criminal activity.[1] A traffic stop, a form of an investigative detention, must be "objectively justified" at its inception under the Fourth Amendment.[2] That means that a traffic stop must be 1) "based on an observed traffic violation" or 2) based on an officer's "reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[3] The law requires far less than perfect certainty of a traffic violation before an officer may initiate a stop.[4] For reasonable suspicion to exist, an officer does not have to rule out the possibility of innocent conduct, but he must have some minimal level of objective justification for making the stop.[5] This standard may be satisfied by evidence that falls considerably short of a preponderance.[6]

Here, Trooper Gosch testified that he stopped Morales because he "failed to signal the lane change from the right outside lane to the left lane of the eastbound lanes of travel" when the two lanes became one lane. The officer testified that he had previously enforced the failure to use

---

[1] *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013).

[2] *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013).

[3] *Id*. (quoting *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009)).

[4] *United States v. Esquivel-Rios*, 725 F.3d 1231, 1235 (10th Cir. 2013).

[5] *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009).

[6] *Id*.

a turn signal for the same reason in that particular area of U.S. Highway 50. The officer issued a warning for violating K.S.A. 8-1548(a), which provides: "No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided."

The question is whether merging from two lanes to one is a "move right or left upon a roadway" that would require a turn signal. The Court is skeptical that this merge without signaling was unlawful. But the Court acknowledges that the statute is not clear and that other courts have upheld stops in similar—though not identical—circumstances.[7]

It is not necessary for this federal court to interpret state traffic law in this case. That's because even if the officer was mistaken about the law, the stop was still lawful under recent Supreme Court precedent. In *Heien v. North Carolina*, the Supreme Court held that a federal court is not required to suppress evidence gathered during a traffic stop that was the result of an officer's mistaken belief about a traffic law.[8] In that case, an officer stopped a driver because only one of the vehicle's two brake lights was working, and the stop led to evidence that supported a conviction for cocaine trafficking. The state appeals court held that the stop was based on the officer's erroneous understanding of state law because the state statute only required one brake light, not two as the officer believed. The state supreme court upheld the stop because the officer's mistaken understanding of the law was reasonable, and the U.S. Supreme

[7] *See United States v. James*, 2014 WL 1923695, at *2 (D. Kan. May 14, 2014) (finding that the statute requires a signal when a vehicle moves right or left even if a vehicle does not completely cross a lane marker); *State v. Favinger*, 2011 WL 2535014, at *3 (Kan. App. June 17, 2011) (finding that the statute's plain text suggests that a signal is required before "any movement right or left," rejecting argument that the statute only applies to complete lane changes).

[8] 135 S. Ct. 530 (2014).

Court agreed.[9] In *Heien*, the U.S. Supreme Court held that reasonable suspicion may be based on a reasonable mistake of law.[10] The Court explained that to be reasonable is not to be perfect, so the Fourth Amendment allows for some mistakes on the part of law enforcement officers.[11] A mistake of law must be objectively reasonable, which means that the Court does not examine the subjective understanding of the particular officer involved.[12]

Consequently, even if Morales is correct about Kansas law—that a turn signal is not required when a super two highway returns to one lane—it would not render the traffic stop here illegal. The plain text of the statute requires a signal for moving left on a roadway, and another district court has said this applies when two lanes become one.[13] Therefore, the officer's understanding of the law is objectively reasonable. As stated earlier, this Court declines to decide whether Morales committed a traffic infraction. The result is the same whether the officer was right or wrong about the law. Because Trooper Gosch's alleged mistake of law was reasonable, there was reasonable suspicion justifying the stop under the Fourth Amendment.

Morales also argues that he was unreasonably detained as a result of the stop. There is not a rigid time limit on investigative detentions, but the detention must not last longer than the reasonable duration required to complete the purpose of the stop.[14] Generally, an officer conducting a routine traffic stop may ask for a driver's license, registration, and other required

---

[9] *Heien v. North Carolina*, 135 S. Ct. 530, 534-36 (2014).

[10] *Id*. at 536 ("The question here is whether reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition. We hold that it can.").

[11] *Id*. ("Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground.").

[12] *Id*. at 539.

[13] *See James*, 2014 WL 1923695, at *2.

[14] *United States v. Paetsch*, 782 F.3d 1162, 1175 (10th Cir. 2015).

papers such as proof of insurance, run a computer check, ask about travel plans, and issue a citation or warning as appropriate.[15] An officer may not prolong the detention unless "(1) he or she 'develops an objectively reasonable and articulable suspicion that the driver is engaged in some illegal activity, or (2) the initial detention becomes a consensual encounter.' "[16]

Here, the Court finds that the initial detention was of a reasonable duration and became a consensual encounter when Morales agreed to allow the officer to ask more questions. The video confirms that it took 10 minutes, 30 seconds for the officer to complete the purpose of the stop, issue a warning, return Morales' documents, and say "you take care, sir." The amount of time was not excessive. The Court finds that the officer's detention of Morales was reasonable in duration and scope. The officer testified that he broke contact with Morales by turning away from the passenger-side window and taking a step or two away from the vehicle. The video confirms that after saying "you take care, sir," Trooper Gosch took two steps, turned around, and asked Morales if he could ask him some more questions. The officer testified that Morales agreed to talk to him. The officer's testimony is supported by the video. After a few questions about his travel and whether there were drugs in the vehicle, Morales agreed to the officer's request to search the vehicle. The officer's testimony and audio from the video confirms that Morales expressly consented to a search of his vehicle.

This conduct and the uncontroverted dialogue converted the officer's reapproach into a consensual encounter. Generally, returning the driver's documents and walking away are sufficient acts to indicate that the driver is free to leave.[17] Any encounter after that becomes a

---

[15] *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013).

[16] *Id*.

[17] *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007).

consensual encounter.[18] Similarly, whether a driver's consent to search is voluntary depends on whether a reasonable person would believe he was free to leave or disregard the officer's request.[19] Here, the Court finds that Morales' consent to search the vehicle was voluntarily given during the course of a consensual encounter with the officer.

In the alternative, the Court notes that law enforcement already had sufficient information from the wiretap and surveillance to support stopping the car without a traffic violation. The Court also notes that law enforcement had sufficient information to support searching the car without Morales' consent, particularly considering his obvious lies about his travel and his extreme nervousness.

Tabor testified that he was involved in an investigation of the two codefendants in this case. Pursuant to a state wiretap, the task force intercepted a call between Morales and Linares. The DEA had made two controlled undercover cocaine buys from Linares earlier in 2014 at his ranch in Colorado. Other intercepted calls indicated that a partial payment had been made for drugs that were going to be obtained from Linares. The intercepted call with Morales involved him talking about coming to meet with Linares at his ranch at a certain time on December 20. Four law enforcement officers set up surveillance in Lamar, saw Morales' minivan arrive at the ranch the afternoon of December 20, followed him, and communicated with Trooper Gosch before the traffic stop later the same afternoon. In addition, Trooper Gosch testified that another officer on the scene of the stop observed Morales grab some things behind his seat, put them in a white plastic bag, and place the bag between the driver and passenger seats.

---

[18] *United States v. Bustillos-Munoz*, 235 F.3d 505, 514 (10th Cir. 2000).

[19] *United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006).

Based on this evidence, the Court finds that there was reasonable suspicion of criminal activity independent of any traffic violation and that there was probable cause to search Morales' vehicle independent of his consent to search. The Court acknowledges that Trooper Gosch testified that he would not have stopped Morales if he had not observed a traffic infraction. The question of whether reasonable suspicion exists is an objective one determined by the totality of the circumstances.[20] An officer's subjective motivation for a stop plays no role in analyzing reasonable suspicion under the Fourth Amendment.[21] An officer's action is reasonable as long as the circumstances, viewed objectively, justify the action regardless of the individual officer's state of mind.[22] And a DEA task force's knowledge of suspected criminal activity can be imputed to a highway patrolman.[23] Here, the DEA task force had enough information through its surveillance to support an objective finding of reasonable suspicion and had communicated enough information to Trooper Gosch to justify the stop. And Morales' behavior during the stop—shaking badly, lying about his travel, and attempting to hide a plastic bag—in addition to information already gathered through surveillance by the DEA task force supported probable cause to believe there was contraband in the vehicle. Under the automobile exception, an officer who has probable cause to believe a vehicle contains contraband is permitted to search the

---

[20] *United States v. Salas*, 756 F.3d 1196, 1201 (10th Cir. 2014).

[21] *Id*.

[22] *United States v. Madrid*, 713 F.3d 1251, 1257 (10th Cir. 2013) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)).

[23] *See United States v. Chavez*, 534 F.3d 1338, 1345-48 (10th Cir. 2008) (discussing collective knowledge doctrine).

vehicle without first getting a search warrant.[24] Therefore, the Court finds that the stop and search were valid even without a traffic violation or consent.

In summary, the Court finds that the traffic stop was justified and the evidence seized from the car is admissible. The Court finds that the traffic stop was justified at its inception either because Morales committed a traffic violation or because the officer made a reasonable mistake of law. The outcome is the same either way. The detention was reasonable in duration and scope and became a consensual encounter when Morales agreed to answer more questions. The video and testimonial evidence is clear that Morales voluntarily consented to the search of his vehicle that led to evidence of illegal drugs. In the alternative, the Court finds that there was reasonable suspicion to support the stop and probable cause to support the search based on information obtained by surveillance before the stop and Morales' behavior during the stop.

**IT IS THEREFORE ORDERED** that the Motion to Suppress (Doc. 34) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 23rd day of June, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[24] *Id.* at 1345.